# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

DomainsNewMedia.com, LLC, Respondent,

v.

Hilton Head Island-Bluffton Chamber of Commerce, Appellant.

Appellate Case No. 2016-000460

---

Appeal from Beaufort County
Michael G. Nettles, Circuit Court Judge

---

Opinion No. 27803
Heard October 19, 2017 – Filed May 23, 2018

---

**REVERSED**

---

Robert E. Stepp, Tina M. Cundari, and Bess J. DuRant, all of Sowell Gray Step & Laffitte, LLC, of Columbia, for Appellant.

Andrew S. Radeker and Taylor M. Smith, IV, both of Harrison & Radeker, P.A., of Columbia, for Respondent.

William W. Wilkins and Kirsten E. Small, both of Nexsen Pruet, LLC, of Greenville, for Amicus Curiae Myrtle Beach Area Chamber of Commerce.

Jay Bender, of Columbia, for Amicus Curiae South Carolina Press Association.

---

**JUSTICE KITTREDGE:**  This appeal presents the question of whether Appellant Hilton Head Island-Bluffton Chamber of Commerce (Chamber) is subject to the Freedom of Information Act (FOIA)[1] due to its receipt and expenditure of certain funds designated for promoting tourism, which we will refer to collectively as accommodation tax funds.  The Chamber's receipt and expenditure of these funds is pursuant to, and governed by, the Accommodations Tax (A-Tax) statute and Proviso 39.2 of the Appropriation Act for Budget Year 2012–2013.

Respondent DomainsNewMedia.com, LLC (Domains) filed a declaratory judgment action, seeking a declaration and corresponding injunctive relief on the basis that the Chamber's receipt of these funds renders the Chamber a "public body" pursuant to FOIA, thus subjecting the Chamber to all of FOIA's requirements.  The Chamber countered that FOIA did not apply, for the receipt, expenditure, and reporting requirements concerning these funds are governed by the more specific A-Tax statute and Proviso 39.2.

The trial court held that the Chamber was a public body and, thus, was subject to FOIA's provisions.  We reverse.  We hold, as a matter of discerning legislative intent, that the General Assembly did not intend the Chamber to be considered a public body for purposes of FOIA as a result of its receipt and expenditure of these specific funds.

## I.

FOIA was enacted to promote transparency in government.  While declaring FOIA's purpose, the General Assembly stated "it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy." *Lambries v. Saluda Cty. Council*, 409 S.C. 1, 9, 760 S.E.2d 785, 789 (2014) (quoting S.C. Code Ann. § 30-4-15 (2007)).  Thus, FOIA "must be construed so as to make it possible for citizens, or their representatives, to learn and report fully the activities of their public officials at a minimum cost or delay."  S.C. Code Ann. § 30-4-15.

Subsequent to the passage of FOIA, the General Assembly enacted the A-Tax statute, which involves the administration of a state sales tax imposed on sleeping accommodations provided to overnight guests.  S.C. Code Ann. § 12-36-920(A)

---

[1] S.C. Code Ann. §§ 30-4-10 to -165 (2007 & Supp. 2017).

(2014 & Supp. 2017); S.C. Code Ann. §§ 6-4-5 to -35 (2004 & Supp. 2017).  A portion of this tax is remitted to the local governments where it was collected and, in turn, they must expend the A-Tax funds in accordance with the statutory provisions governing allocation.  *See* S.C. Code Ann. § 12-36-2630(3); S.C. Code Ann. §§ 6-4-10 to -35.  Specifically, the A-Tax statute dictates that the local governments must select at least one organization—referred to as the designated marketing organization (DMO)—to manage the expenditure of the funds; however, the local governments must ensure the funds are "used only for advertising and promotion of tourism."  S.C. Code Ann. § 6-4-10(3).

In this case, the Chamber was selected to be a DMO—to direct the expenditure of tourism funds—for several local governments and it received funds from the Department of Parks, Recreation, and Tourism (a PRT Grant).  These public funds are at the center of this appeal and raise the question of whether the legislature intended the Chamber to be subject to FOIA on the singular basis that it expends these funds.

The Chamber is a nonprofit organization that was created in 1957.  The Chamber's stated purpose is to promote the common interests of its members, stimulate the expanding regional economy, and enhance the quality of life for all.  The Chamber offers private membership and conducts seminars, as well as other events, for the benefit of its members.  These members pay dues and contribute to the Chamber's various projects.

In addition to these purely private activities, since 1983, the Chamber has served the Town of Hilton Head Island as its DMO.[2]  To be eligible for selection, the Chamber was required to demonstrate to the local governments "that it has an existing, ongoing tourism promotion program or that it can develop an effective tourism promotion program."  S.C. Code Ann. § 6-4-10(3).  Moreover, the Chamber received a PRT Grant during the 2012–2013 fiscal year.  The Chamber was required to submit a proposal to measure the success of its tourism marketing plan before it could be selected for the PRT Grant.[3]

---

[2] The Chamber began serving as the DMO for the Town of Bluffton and Beaufort County in approximately 2001 and 2008, respectively.

[3] Only one specific proviso providing a PRT Grant is at issue—Proviso 39.2 contained in the Appropriation Act for Budget Year 2012–2013 (Proviso 39.2).

Domains is a website company, based out of Beaufort County, which has questioned the Chamber's expenditure of the accommodation tax funds. In November 2012, Domains sent a FOIA request to the Chamber for information regarding its staff membership, policies, minutes, and accounts. Oddly, most of the information requested by Domains extends beyond the expenditure of these tourism funds. For example, Domains requested the non-exempt minutes of *all* meetings and votes by the Chamber. The Chamber refused to provide the requested information on the basis that it was not a public body for FOIA purposes, as the expenditure of these discrete funds is governed by the A-Tax statute and Proviso 39.2 and the corresponding records are available to the public through the local governments or the State.[4]

Thereafter, Domains filed suit seeking declaratory and injunctive relief to establish that the Chamber was a public body under FOIA and to require production of the requested information concerning all the Chamber's activities. After the parties conducted discovery, cross-motions for summary judgment were filed. The trial court granted Domains' summary judgment motion and held that the Chamber was a public body under FOIA's definition. Relying on *Weston v. Carolina Research & Development Foundation*, 303 S.C. 398, 401 S.E.2d 161 (1991), the trial court concluded there was a diversion of public funds to a related organization with no public access to information regarding the expenditure of the funds. The Chamber appealed, and the appeal was certified to this Court pursuant to Rule 204(b), SCACR.

## II.

### A.

Domains argues that the Chamber's expenditure of public funds—through its role as DMO—causes it to fall within the plain language of FOIA and, moreover, it is considered a public body under the interpretation provided in *Weston*. The Chamber argues that public accountability for the expenditure of these funds has been provided through the A-Tax statute, as well as Proviso 39.2, such that the General Assembly did not intend for it to become a public body under FOIA, and furthermore, its provision of services as a marketing organization does not render it a public body for FOIA purposes under *Weston*.

---

[4] It is important to note that FOIA applies to the governmental entities that administer these funds.

"The standard of review in a declaratory action is determined by the underlying issues." *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 398, 728 S.E.2d 477, 479 (2012) (citing *Felts v. Richland County.*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991)). "The interpretation of a statute is a question of law." *Sparks v. Palmetto Hardwood, Inc.*, 406 S.C. 124, 128, 750 S.E.2d 61, 63 (2013) (citing *CFRE, L.L.C. v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)). "This Court may interpret statutes, and therefore resolve this case, 'without any deference to the court below.'" *Brock v. Town of Mount Pleasant*, 415 S.C. 625, 628, 785 S.E.2d 198, 200 (2016) (quoting *CFRE*, 395 S.C. at 74, 716 S.E.2d at 881).

## B.

We are presented with the following question—did the legislature intend that the Chamber be a public body for FOIA purposes due to its receipt and expenditure of accommodation tax funds? While the Chamber technically expends public funds, we are firmly persuaded that the General Assembly did not intend the Chamber to be considered a public body for FOIA purposes based upon its receipt and expenditure of accommodation tax funds.

We begin with an analysis of FOIA. To further its purpose of a transparent government, "FOIA subjects a 'public body' to record disclosure." *Disabato, v. S.C. Ass'n of Sch. Adm'rs*, 404 S.C. 433, 442, 746 S.E.2d 329, 333 (2013). As this Court has recognized, "[i]f public bodies were not subject to the FOIA, governmental bodies could subvert the FOIA by funneling State funds to nonprofit corporations so that those corporations could act, outside the public's view, as proxies for the State." *Id.* at 455, 746 S.E.2d at 340. "Among those entities defined as a public body subject to the statute are '*any* organization, corporation, or agency supported in whole or in part by public funds or expending public funds . . . .'" *Id.* at 442, 746 S.E.2d at 333 (emphasis added) (quoting S.C. Code Ann. § 30-4-20(a)). FOIA's record disclosure requirement provides that a "person has a right to inspect, copy, or receive an electronic transmission of *any* public record of a public body" subject to certain exceptions. S.C. Code Ann. § 30-4-30(a) (emphasis added). A "public record" is defined to include "*all* books, papers, maps, photographs, cards, tapes, recordings, or other documentary materials regardless of physical form or characteristics prepared, owned, used, in the possession of, or retained by a public body" with certain exclusions. S.C. Code Ann. § 30-4-20(c) (emphasis added).

Moreover, FOIA imposes additional disclosure requirements on public bodies, such as all meetings must be open to the public, subject to limited exceptions. S.C. Code Ann. § 30-4-60. Also, a public body must provide advance notice of all meetings and keep written minutes, which include statutorily specified information. S.C. Code Ann. §§ 30-4-80, -90. In addition, FOIA provides that a citizen of the State may seek a declaratory judgment and injunctive relief to enforce the provisions of FOIA. S.C. Code Ann. § 30-4-100.

Thus, the General Assembly has evidenced its intent to ensure transparency is provided to the public with regard to the general expenditure of public funds.

## C.

We now turn our attention to the A-Tax statute and Proviso 39.2. With regard to the specific expenditure of the accommodation tax funds involved in this case, the General Assembly enacted section 6-4-10(3), which sets forth the following:

> To manage and direct the expenditure of these tourism promotion funds, the municipality or county shall select one or more organizations, *such as a chamber of commerce*, visitor and convention bureau, or regional tourism commission, which has an existing, ongoing tourist promotion program. . . . Immediately upon an allocation to the special fund, a municipality or county shall distribute the tourism promotion funds to the organizations selected or created to receive them. Before the beginning of each fiscal year, an organization receiving funds from the accommodations tax from a municipality or county shall submit for approval a budget of planned expenditures. At the end of each fiscal year, an organization receiving funds shall render an accounting of the expenditure to the municipality or county which distributed them. . . .

S.C. Code Ann. § 6-4-10(3) (emphasis added).[5] The reporting and accountability provisions directly governing the expenditure of these funds control the disposition of this appeal.

---

[5] In addition, Proviso 39.2 requires the DMO to submit a proposal and final report regarding the expenditures:

> Organizations applying for a grant must include in the grant application, information on how the organization proposes to measure

Under the A-Tax statute, to evidence compliance in expending these funds, a local government must fulfill several requirements. Importantly, the A-Tax statute provides three layers of review for these expenditures—a local advisory committee, a statewide oversight committee, and an expenditure review committee. First, it requires a local government receiving over $50,000 in revenue from A-Tax funds to appoint an advisory committee "to make recommendations on the expenditure of revenue generated from the accommodations tax." *Id.* § 6-4-25(A).[6] Second, the local government must submit certain information to the South Carolina Accommodations Tax Oversight Committee, to include a "list of how funds from the accommodations tax are spent," which is due "before October first and must include funds received and dispersed during the previous fiscal year." *Id.* § 6-4-25(D). Finally, these reports are provided to the Tourism Expenditure Review Committee (TERC) for review to ensure that the local government complies with the basic requirements for expenditures set forth in the statute. *Id.* § 6-4-35; *Id.* § 6-4-25(D). TERC may consider "further supporting information" from the local government or find "an expenditure to be in noncompliance," resulting in certification to the State Treasurer who will withhold the noncompliant amount from the local government. *Id.* § 6-4-35(B)(1)(a). In

> the success of the marketing and public relations program, including the estimated return on investment to the state. . . . An organization receiving a grant must use the public and private funds only for the purpose of destination specific marketing and public relations designed to target international and/or domestic travelers outside the state to destinations within the state. . . . Grant recipients shall provide an annual report by November first, to the Chairmen of the Senate Finance Committee and the House Ways and Means Committee and the director of the Department of Parks, Recreation and Tourism on the expenditure of the grants funds and on the proposed outcome measures.

Act No. 288, 2012 S.C. Acts 402–03 (Proviso 39.2).

[6] The local governments in this case are subject to this provision, which requires the advisory committee to "submit written recommendations to a municipality or county at least once annually" and these "recommendations must be considered by the municipality or county in conjunction with the requirements of this chapter." S.C. Code Ann. § 6-4-25(C). The Chamber, as DMO, may provide the proposed budget to this committee for its review and recommendation before obtaining approval from the local government.

addition, TERC "has jurisdiction to investigate and research facts on written complaints submitted to it with regard to the appropriate tourism-related expenditures and resolve these complaints." *Id.* § 6-4-35(B)(2). Any citizen may file such a complaint.

Thus, these provisions provide that the local governments must select a qualified DMO to receive the funds designated for promoting tourism, but the local governments remain accountable for the expenditure of these funds as they must review and, if appropriate, approve the budget proposed by the DMO, receive an accounting of expenditures from the DMO, and submit evidence of their compliance to proper committees. Likewise, the expenditure of the funds received through the PRT Grant are provided in an annual report to the Senate Finance Committee, the House Ways and Means Committee, and the Department of Parks, Recreation, and Tourism.

## D.

FOIA is a general statute; the A-Tax statute is a specific statute. "Where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect." *Capco of Summerville, Inc. v. J.H. Gayle Const. Co.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) (citation omitted).

According to FOIA, any organization that is "supported in whole or in part by public funds or *expending public funds*" is a public body. S.C. Code Ann. 30-4-20(a) (emphasis added). Accommodation tax funds are, of course, public funds. Therefore, if we look only to FOIA as Domains suggests and go no further, it would appear that the Chamber is subject to FOIA as a public body. The subsequently enacted A-Tax statute and Proviso 39.2, however, provide a specific and comprehensive approach for the receipt, expenditure, and oversight of these funds. The presence of the specific A-Tax statute and Proviso 39.2 play the lead role in our disposition of this case.

Moreover, even in the absence of a specific statute, this Court has recognized that the applicability of FOIA to a non-governmental entity is more involved than classification as a public body due to the receipt of public funds. *See Weston v. Carolina Research & Dev. Found.*, 303 S.C. 398, 401 S.E.2d 161 (1991).

Both parties cite *Weston* in support of their respective positions. 303 S.C. 398, 401 S.E.2d 161. We find *Weston* supports the Chamber's position.[7] In *Weston*, this Court evaluated whether a nonprofit foundation—operated exclusively for the benefit of the University of South Carolina—was a public body pursuant to FOIA on the bases of four transactions in which public funds were transferred to the foundation. *Id.* We rejected the suggestion that the mere receipt or expenditure of public funds automatically and categorically transformed an otherwise private entity into a public body triggering the full panoply of FOIA requirements. We made clear that the mere receipt or expenditure of public funds did not mean "that the FOIA would apply to business enterprises that receive payment from public bodies in return for supplying specific goods or services on an arms length basis." *Id.* at 404, 401 S.E.2d at 165. We ultimately concluded in *Weston* that the nonprofit foundation in that case was a public body under FOIA, as the Court observed that the public needed access to the records of the organization "when a block of public funds is diverted *en masse* from a public body to a related organization, or when the related organization undertakes the management of the expenditure of public funds" as otherwise the public is unable to determine how the funds were spent. *Id.* Significantly, in that case, there was not a statute or proviso governing the procedure and oversight for the expenditure of the specific funds at

_____

[7] This is the main point of divergence with the dissenting opinion. While we take no issue with the important, indeed vital, goals served by FOIA, as we acknowledged above, the dissent would classify the Chamber as a public body for FOIA purposes simply as a result of its receipt of public funds. This is so, according to the dissent, because we must apply the plain language of one phrase in the FOIA statute. The dissent would apply all of FOIA to any organization that receives any public funds. While we acknowledge that in many instances the receipt of public funds will subject the organization to FOIA, the dissent's categorical rule is contrary to this Court's discernment of legislative intent in *Weston*. The dissent goes further and accuses us of "employ[ing] an elaborate analysis to avoid the plain language of the FOIA." Not so. We are remaining faithful to this Court's decisional framework in *Weston*, to which the legislature for more than a quarter century has not responded, much less superseded. If the dissent's "look only to FOIA" approach were dispositive, *Weston* could not stand as the Court held that FOIA does not always and automatically apply when public funds are received by an organization. As is our general stance, we elect to honor our precedents and respect the authority of the legislature to respond to (including superseding) our construction of statutes. If the General Assembly now disagrees with *Weston*, or our decision today, it lies within the province of the legislature to respond and overrule our precedents.

issue or mandating the public reporting and accountability as exists with respect to A-Tax funds and the PRT Grant.

Here, as noted, there is a specific statute (or proviso) that directs the local governments to select a DMO to manage the expenditure of certain tourism funds and requires the governments to maintain oversight and responsibility of the funds by approving the proposed budget and receiving an accounting from the DMO. Thus, this is not the situation found in *Weston* wherein the funds were intended to be given to a public body and, instead, were diverted to a private organization to be spent without oversight. Through the A-Tax statute (and Proviso 39.2) there are accountability measures in place and the public has access to information regarding how the funds are spent. Therefore, the concern in *Weston* regarding the lack of a legislatively sanctioned process mandating oversight, reporting, and accountability is not present in the expenditure of these funds.

We do agree with Domains that the A-Tax statute does not provide for the expanse of disclosure requirements that are available under FOIA. Indeed, Domains makes no pretense that FOIA would be imposed on the Chamber so that *all* of the Chamber's procedures and activities would be controlled by *all* of FOIA's provisions. This would subject the Chamber to all of the various requirements of FOIA, such as advance notice of meetings, in every area of the Chamber's activities. Unlike some other states, South Carolina's FOIA provisions do not provide a limitation to the extent of FOIA's reach within an organization once it is classified as a public body. *Compare* S.C. Code Ann. § 30-4-20(a) (stating "'Public body' means . . . *any organization*, corporation, or agency supported in whole or in part by public funds or expending public funds" (emphasis added)), *with* Tex. Gov't Code Ann. § 552.003(1)(A)(xii) (West 2013) (defining a "Governmental body" as including "*the part, section, or portion of an organization*, corporation, commission, committee, institution, or agency *that spends* or that is supported in whole or in part by *public funds*" (emphasis added)). The degree of oversight and reporting requirements are policy decisions which lie in the province of the legislature. Here, the General Assembly has specified a detailed process for the expenditure and accountability of these tourism funds and that determination is controlling.

## III.

Contrary to Domains' suggestion, the receipt and expenditure of these accommodation tax funds in no manner allows the Chamber (or any DMO) to spend public funds free from public accountability and oversight. We fully

appreciate the need for some measure of transparency and public accountability in the expenditure of public funds. Yet, in this case, the A-Tax statute and Proviso 39.2 set forth the General Assembly's determination of the required level of oversight, transparency, and accountability.

FOIA, of course, remains vibrant as it provides the General Assembly's determination for the optimum transparency in connection with the general expenditure of public funds. Following the passage of FOIA, the General Assembly enacted the more narrow and targeted A-Tax statute (and Proviso 39.2) to provide what it determined were the necessary accountability safeguards with regard to the expenditure of these specific funds while simultaneously protecting the private nature of the organizations selected to perform this marketing function. The General Assembly deemed these provisions sufficient to ensure that the funds are being properly expended, and Domains has presented no valid legal basis to contravene this legislative determination. Accordingly, the judgment of the trial court is reversed.

**REVERSED.**

**BEATTY, C.J., HEARN and JAMES, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** The Freedom of Information Act (FOIA) applies to any "public body," which is defined as "any organization . . . expending public funds." S.C. Code Ann. § 30-4-20(a) (2007). The Hilton Head-Bluffton Chamber of Commerce agreed to serve as the organization to "receive" and "direct the expenditure" of accommodations sales tax revenues collected by the towns of Hilton Head and Bluffton and Beaufort County "for advertising and promotion of tourism" pursuant to subsection 6-4-10(3) of the South Carolina Code (Supp. 2017). In fiscal year 2013-14, as a representative year, the Chamber "expended" $1,531,000 of these public funds to promote tourism. The FOIA provides any "person has a right to inspect . . . any public record of a public body." S.C. Code Ann. § 30-4-30(A)(1) (Supp. 2017). It requires no elaborate analysis to apply the plain words of the FOIA and reach the conclusion that the Chamber's agreement to expend these public funds renders it a public body subject to the record disclosure requirements of the FOIA.

The majority has employed an elaborate analysis to avoid the plain language of the FOIA under the guise of "discerning legislative intent." However, our law does not permit us to look outside the language of a statute unless there is an ambiguity in the statute. *See Smith v. Tiffany*, 419 S.C. 548, 555, 799 S.E.2d 479, 483 (2017) ("If a statute is clear and explicit in its language, then there is no need to resort to statutory interpretation or legislative intent to determine its meaning." (quoting *Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 401, 175 S.E.2d 805, 817 (1970))); 419 S.C. at 556, 799 S.E.2d at 483 ("Absent an ambiguity, there is nothing for a court to construe, that is, a court should not look beyond the statutory text to discern its meaning."). The majority acknowledges there is no ambiguity, stating,

> According to FOIA, any organization that is "supported in whole or in part by public funds or expending public funds" is a public body. Accommodation tax funds are, of course, public funds. Therefore, if we look only to FOIA as Domains suggests and go no further, it would appear that the Chamber is subject to FOIA as a public body.

Under *Smith* and *Timmons*, therefore, we must "look only to FOIA," because there is no ambiguity in it. Based on the plain language in subsection 30-4-20(a), the Chamber is a public body and therefore subject to the record disclosure requirements of the FOIA.

Even if we did look beyond the FOIA, however, the majority's justification for finding the Act does not apply in this circumstance fails. First, the majority's decision is inconsistent with the policy behind the FOIA, which is set forth in section 30-4-15 of the South Carolina Code (2007). The General Assembly found "it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy." § 30-4-15. Therefore, the General Assembly enacted the FOIA "to make it possible for citizens . . . to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings." *Id.*; *see also Brock v. Town of Mount Pleasant*, 415 S.C. 625, 628, 785 S.E.2d 198, 200 (2016) ("The essential purpose of FOIA is to protect the public from secret government activity.").

The majority states the accommodations tax statute and Proviso 39.2 "play the lead role in our disposition of this case" because they "provide a comprehensive approach for the receipt, expenditure, and oversight of these [public] funds." In other words, the majority finds the policy of the FOIA is fulfilled through the accommodations tax statute and Proviso 39.2. This conclusion is wrong. Although the accommodations tax statute does have specific provisions relating to the "receipt" and "expenditure" of public funds, its provisions concerning "oversight" of spending public funds fall far short of meeting the policy goals of the FOIA.

Specifically, the accommodations tax statute does not address the disclosure of records at the core of the FOIA policy. In fact, the statute's "three layers of review" the majority finds to be sufficient "oversight" is contrary to the policy. By placing the responsibility for the expenditure of public funds in the hands of a private entity such as the Chamber, and then relying on public officials for "oversight," with no right of access by the public, the accommodations tax statute actually inhibits citizens from being "advised of the performance of public officials and of the decisions that are reached in public activity," thereby frustrating—not furthering—the "vital" policy of open government.

To the extent the policy behind the FOIA could be furthered by "oversight" from public officials, the record in this case reveals the information provided to those public officials does not allow the officials to determine how the funds are being spent. For example, I asked counsel for the Chamber at oral argument about a specific line item contained in the Chamber's proposed budget for spending accommodations sales tax funds in fiscal year 2013-14. The line appears under the headings "Expenses" and "Digital Marketing," and reads, "SEM Marketing

[$]200,000."[8]  I asked, "In the town's relationship with the Chamber, . . . as a matter of course, the town doesn't know what the $200,000 represents for SEM marketing?"  Counsel responded, "Well, it may.  I don't know."  After several other questions and answers, counsel agreed with the following assertion:

> Unless somehow the town takes the initiative to learn from the Chamber what the $200,000 represents, then in our scenario, a member of the public would never be able to gain access to the individual vendors, whether they submitted bids, what were the bids, what was the highest bid, and on and on and on.

This demonstrates the reality that the accommodations tax statute does not allow the public to learn how public funds are being spent with any degree of specificity, and therefore the statute does not meet the policy goals of the FOIA.

Second, the majority relies heavily on the principle that a more specific statute (subsection 6-4-10(3)—the accommodations tax statute) controls the more general one (FOIA).  That principle is inapplicable in this case because the two statutes do not address the same subject.  In *Capco of Summerville, Inc. v. J.H. Gayle Construction Co.*, 368 S.C. 137, 628 S.E.2d 38 (2006), the case cited by the majority to support its application of the principle, we held the principle applied only if the statutes address "the identical issue."  368 S.C. at 142, 628 S.E.2d at 41.  The FOIA requires that a public body disclose its records; the accommodations tax statute does not even address that issue.

Third, the majority's reliance on *Weston v. Carolina Research & Development Foundation*, 303 S.C. 398, 401 S.E.2d 161 (1991), is misplaced.  We did not create any "decisional framework," *see supra* note 7, in *Weston* that permits us to ignore the plain language of the FOIA.  Rather, we applied that plain language to transactions that are factually indistinguishable from the Chamber's receipt and expenditure of accommodations sales tax revenues in this case, and held the FOIA

---

[8] SEM marketing—or search engine marketing—is defined as "a process by which multiple methods are utilized to improve market visibility and exposure for a brand, product or service" and includes "search engine optimization (SEO), social networking, bid placement, pay-per-click (PPC), contextual advertising, paid inclusion, geomapping, . . . as well as multiple media formats, such as YouTube and geospecific marketing, like Foursquare."  Techopedia, *Search Engine Marketing (SEM)*, https://www.techopedia.com/definition/25079/search-engine-marketing-sem (last visited Apr. 2, 2018).

applies.  We stated "the unambiguous language of the FOIA mandates that the receipt of support in whole or in part from public funds brings a corporation within the definition of a public body."  303 S.C. at 403, 401 S.E.2d at 164.

The majority in this case refers to the following passage from *Weston*:

> [T]his decision does not mean that the FOIA would apply to business enterprises that receive payment from public bodies in return for supplying specific goods or services on an arm's length basis.  In that situation, there is an exchange of money for identifiable goods or services and access to the public body's records would show how the money was spent.  However, when a block of public funds is diverted en masse from a public body to a related organization, or when the related organization undertakes the management of the expenditure of public funds, the only way that the public can determine with specificity how those funds were spent is through access to the records and affairs of the organization receiving and spending the funds.

303 S.C. at 404, 401 S.E.2d at 165.  The purpose of this passage was to point out different types of transactions and to explain that transactions made on an "arm's length basis" would not trigger the FOIA because "there is an exchange of money for identifiable goods or services and access to the public body's records would show how the money was spent."  This passage was never intended to create any additional requirement—or a "more involved" analysis—to determine the applicability of the FOIA.

In contrast to the majority's proposition, the quoted language from *Weston* requires a finding that the FOIA does apply to the Chamber.  The Chamber's agreement to expend these funds does not involve the type of "arm's length" transaction that is an "exchange of money for identifiable goods or services" we said in *Weston* would not be subject to the FOIA.  Rather, the Chamber's decision to play this role required it to "manage and direct the expenditure of these tourism promotion funds," § 6-4-10, which is precisely the type of transaction we held in *Weston* is always subject to the FOIA, 303 S.C. at 404, 401 S.E.2d at 165 (finding the FOIA applies when an "organization undertakes the management of the expenditure of public funds").  As such, "the only way that the public can determine with specificity how those funds were spent is through access to the records and affairs

of the organization receiving and spending the funds." *Id.* Therefore, *Weston* does not support the majority's proposition that "the applicability of FOIA to a non-governmental entity is more involved than classification as a public body due to the receipt of public funds." In fact, *Weston* rejects the majority's proposition that there is any "decisional framework" for the FOIA except that set forth in the FOIA.

Finally, the majority expresses concern over the Chamber being exposed to other requirements under the FOIA if we find it is a public body. Those other requirements include open meetings, advanced notice of meetings, and the requirement that public bodies keep written minutes. *See* S.C. Code Ann. §§ 30-4-60, -80, and -90 (2007 & Supp. 2017). There are two simple solutions to this problem. One, if the Chamber does not wish to subject itself to all of the requirements of the FOIA, it may choose not to serve as the designated marketing organization to "receive" and "direct the expenditure" of accommodations sales tax revenues. Two, if the Chamber is unwilling to give up its position as the designated marketing organization, it can easily create a separate subsidiary or related entity devoted solely to that function. The majority's concerns are unfounded.

For these reasons, I respectfully dissent.