# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Elizabeth Heatley, Neil B. McCann, Jr., David Neil Monk, Thomas V. Bessent, and Mariner's Cay Marina Council of Co-Owners, Inc., Respondents,

v.

Mariner's Cay Marina Condo, LLC, Mariner's Cay Fuel Dock, LLC, George A. Farmer., Jr., and South Atlantic Bank, Defendants,

Of which Mariner's Cay Marina Condo, LLC, Mariner's Cay Fuel Dock, LLC, and George A. Farmer., Jr. are the Appellants.

Appellate Case No. 2022-001479

---

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

---

Opinion No. 6131
Heard October 8, 2025 – Filed January 14, 2026

---

## AFFIRMED

---

George Hamlin O'Kelley, III, of Buist Byars & Taylor, LLC, of Mt. Pleasant, for Appellants Mariner's Cay Marina Condo, LLC and Mariner's Cay Fuel Dock, LLC; and Kevin W. Mims and Whidbee Sale Perrin, Sr., both of Luzuriaga Mims, LLP, of Charleston, for Appellants Mariner's Cay Marina Condo, LLC, and George A. Farmer, Jr.

Capers G. Barr, III, of Barr Unger & McIntosh, LLC, and David Cooper Cleveland, of Clawson & Staubes, LLC, both of Charleston, for Respondents.

---

**MCDONALD, J.:** Mariner's Cay Marina Condo, LLC, Mariner's Cay Fuel Dock, LLC, and George A. Farmer, Jr. appeal the master-in-equity's order granting declaratory relief to the Mariner's Cay Marina Council of Co-Owners (the Council) and four property owners (Respondents) at Mariner's Cay Marina. Appellants challenge the master's finding that the 2007 Master Deed for the Mariner's Cay Horizontal Property Regime is void to the extent it sought to convert common elements of the regime into individual units without a vote of the property owners. Appellants contend Respondents acquiesced to these Master Deed amendments and are judicially estopped from challenging the ownership transfer of the common element units. We affirm the order of the master.

**Facts and Procedural History**

In 1982, the Mariner's Cay Racquet and Yacht Club Homeowners' Association, Inc.[1] granted an exclusive alienable easement in perpetuity to Mariner's Cay Development Corp. to construct the Mariner's Cay Marina along the north shore of the Folly River. The Mariner's Cay Marina included ninety boat slips, walkways, piers, a boat landing, and a building commonly known as the "Ship's Store." Two of the boat slips were used as fuel docks (the Fuel Docks) and housed the marina's wastewater pump-out station.

From its inception, the Ship's Store—a two-story building constructed on marsh pilings—served as the headquarters for the marina's dockmaster. An underground fuel storage tank and the pump for the wastewater pump-out system are located beneath the Ship's Store. The first level of the Ship's Store contains restrooms to which unit owners previously had unlimited access.[2]

---

[1] The Mariner's Cay Racquet and Yacht Club is a horizontal property regime consisting of condominiums adjacent to the marina and boat slips at issue here. Although both entities share the name Mariner's Cay, these are separate regimes.

[2] Some of the facilities described here (and throughout the record) were required by the South Carolina Department of Health and Environmental Control's Office of Coastal Resources Management for the issuance of a marina permit.

In 2006, the marina was converted into a horizontal property regime under the South Carolina Horizontal Property Act,[3] and the Mariner's Cay Horizontal Property Regime was established by Marina at Mariner's Cay, LLC (the Declarant). On May 18, 2006, the Master Deed for the Mariner's Cay Marina Horizontal Property Regime was recorded. The 2006 Master Deed established each boat slip as a "unit," with a total of eighty-eight units. The 2006 Master Deed established the Fuel Docks as Commercial Unit No. 2, which was identified as Dock Units B-21 and B-22. The Ship's Store consisted of two commercial units: the first floor was identified as Commercial Unit No. 1-A and the second floor as Commercial Unit No. 1-B. Article VII of the 2006 Master Deed described these common elements, stating, "NOTE: COMMERCIAL UNITS NO 1-A AND 1-B AND COMMERCIAL UNIT NO. 2 ARE COMMON ELEMENTS OR LIMITED COMMON ELEMENT [sic]."

The 2006 Master Deed provided that the common elements would be conveyed to the Mariner's Cay Marina Council of Co-Owners. Section 10.1, titled "Co-Owners' Use Rights," further stated, "Subject to this Master Deed and the By-Laws, a Co-Owner shall have: (i) an undivided ownership interest according to the Unit's percentage interest in the Common Elements . . . ." Article XVI addressed how the 2006 Master Deed could be amended:

> (a) The Master Deed shall be amended, except as provided in (b) below, only by vote of Co-Owners owning seventy-five percent (75%) of the Units and only by and with the consent of Declarant, at any meeting of the Council of Co-Owners duly called for such purpose, following written notice to all Co-Owners, except that no such amendment shall change the rights reserved to Declarant, the boundaries of any Unit, the basic values of the Units and the undivided interest in the Common Elements appertaining thereto, the liability for Common Expenses appertaining to the Units, or rights to Common Profits appertaining thereto. No amendment shall be effective until recorded in the Charleston County RMC Office.

---

[3] S.C. Code. Ann. § 27-31-10 to -440 (2007 & Supp. 2025).

(b) For so long as the Declarant has the right to appoint and remove directors of the Council of Co-Owners as provided in this Master Deed, the Declarant may unilaterally amend this Declaration for any purpose. Thereafter, the Declarant may unilaterally amend this Declaration at any time and from time to time if such amendment is necessary (i) to bring any provision into compliance with any applicable governmental statute, rule, regulation, or judicial determination; (ii) to enable any reputable title insurance company to issue title insurance coverage on the Units, (iii) to enable any institutional or governmental lender, purchaser, insurer or guarantor of Mortgage loans, including, to make, purchase, insure or guarantee Mortgage loans on the Units; or (iv) to satisfy the requirements of any local, state, or federal government agency. However, any such amendment shall not adversely affect the title to any Unit unless the Owner shall consent in writing.

Under the 2006 Master Deed, the Declarant reserved the right to appoint and remove members of the Association Board of Directors for eighteen months or until 90% of the Units were sold, whichever occurred first.

On March 19, 2007, an Amended Master Deed was recorded. The 2007 Amended Master Deed eliminated the Ship's Store and Fuel Docks as common elements and converted them into individual units. Between the recording of the 2006 Master Deed and 2007 Amended Master Deed, thirty-nine boat slips were sold.

Two months later, on May 18, 2007, the Declarant conveyed all declarant rights under the Master Deed to Flint River Capital, Inc. On February 27, 2009, Flint River Capital conveyed the Ship's Store and Fuel Docks to Tiger River Capital. On December 22, 2009, Tiger River Capital, LLC took out a construction mortgage secured by the Ship's Store; the Fuel Docks were also mortgaged. Despite this purported change in ownership of the Ship's Store and Fuel Docks, there was no change at this time to the individual unit owners' access to and use of these common element facilities.

Ultimately, Tiger River Capital defaulted on the mortgages, and the mortgagee (Emerald Portfolio, LLC) filed a foreclosure action. The Council appeared as a lienholder. On February 27, 2015, the master-in-equity ordered that the Ship's

Store and Fuel Docks be sold at public auction. Following the foreclosure sale, the master issued a Master's Deed conveying the Ship's Store and Fuel Docks to Emerald Portfolio. On November 15, 2015, Emerald Portfolio LLC conveyed the Ship's Store and Fuel Docks to Emerald McDonough Road Holdings, LLC.

On May 19, 2016, Emerald McDonough Road Holdings, LLC conveyed the Fuel Docks to Mariners Cay Fuel Dock, LLC and the Ship's Store to Mariners Cay Marina Condo, LLC. George Farmer is the sole member of both entities incorporated to hold title to these units.

After Farmer took ownership of the Ship's Store and Fuel Docks, disputes began to arise with other unit owners over access to Commercial Units 1 and 2. At some point, the dockmaster vacated the Ship's Store apartment and was no longer permitted to use the Ship's Store as the dockmaster's headquarters. Farmer also prohibited individual unit owners from using the wastewater pump-out system on the Fuel Docks.

On June 16, 2017, Alben Neighbors, Dan Nekola, and the Mariner's Cay Council of Co-owners filed a lis pendens and action to declare invalid the 2007 Amended Master Deed.[4] In July 2017, they amended their complaint to add Farmer as a defendant and to assert additional claims related to a damaged security gate and access to the wastewater pump. Appellants timely answered and raised counterclaims for unjust enrichment (related to improvements made to the units), indemnification, nuisance, and civil conspiracy.

In September 2017, Neighbors, Nekola, and the Council sought temporary injunctive relief to address a number of access issues. The movants alleged Appellants had restricted access to the Ship's Store bathrooms, the Fuel Docks, the wastewater pump-out station, and the wastewater pump parts beneath the Ship's Store. According to the affidavit of Thomas Bessent, the Marina Council was "unable to service the wastewater pump-out facility" due to this restricted access, and this jeopardized the marina permit. Following a hearing, the circuit court granted in part and denied in part the requests for temporary injunctive relief— allowing the movants access to the wastewater pump-out station and fuel pumps but denying their requests for injunctive relief relating to a handicap access ramp and electrical control panel.

---

[4] The plaintiffs initially sought to file this case as a class action, but the circuit court denied class certification.

Appellants amended their answer to raise an affirmative defense of judicial estoppel based upon the Council's pleadings in the foreclosure action. In June 2020, Appellants sought a temporary restraining order and injunction *pendente lite*, citing concerns over use of the Ship's Store facilities amidst the pandemic.

Around this same time, Elizabeth Heatley, Neal B. McCann, Jr., David Neil Monk, Thomas V. Bessent, and the Mariner's Cay Council of Co-Owners filed a fourth amended complaint. Respondents note this pleading followed the circuit court's denial of class certification to more succinctly address issues raised in the name of four "discrete Plaintiffs."[5] In December 2020, the circuit court referred the request for a declaratory judgment and related claims to the master-in-equity.

In March 2021, Appellants moved for summary judgment, asserting Respondents had acquiesced to the changes in the Master Deed and that judicial estoppel barred their claims. Respondents filed their own summary judgment motion, arguing there was no acquiescence to the Master Deed changes and that section 27-31-70 of the South Carolina Code, titled "Common Elements Shall Not be Divided," was dispositive.

By order dated May 14, 2021, the master granted Appellants' motion for summary judgment, finding Respondents acquiesced to the Amended Master Deed. The master further found judicial estoppel applied to prevent Respondents from arguing they did not acquiesce to this conversion of the common elements to individual units because the Council filed an answer in the foreclosure action and failed to object at that time to the sale of the Units. Respondents timely filed a Rule 59(e), SCRCP, motion, again arguing section 27-31-70 controlled. On July 8, 2021, the master vacated this summary judgment order and set the case for trial.

In March 2022, the case went to trial. Monk, McCann, Heatley, and Bessent all testified they were unaware of any attempted amendment of the 2006 Master Deed until years later and would have opposed any amendment removing the Ship's Store and Fuel Docks as common elements of the Regime.

The master granted Respondents' motion for declaratory relief, finding Appellants wrongfully held title to the Ship's Store and Fuel Dock. The master concluded the 2007 Amended Master Deed was void to the extent it sought to divest the individual unit owners of their vested property interests in the common elements

---

[5] The named plaintiffs have changed throughout the course of this litigation as certain plaintiffs sold their units.

because the individual owners did not consent to the change—in writing—as required by the specific terms of the 2006 Master Deed. The master further found the 2007 Amended Master Deed violated § 27-31-70 because it was a covenant contravening the principle that such common elements may not unilaterally be divided. Moreover, § 27-31-60 did not control because this provision addresses the property interests of unit owners as to each other as well as their relative percentage ownership interests in common elements. The master also ruled that even if § 27-31-60 applied, there was no evidence that the all co-owners—or the individual Respondents—acquiesced to the 2007 Master Deed revisions. Nor did judicial estoppel bar Respondents from pursuing claims relating to the common elements because none of the individual unit owners were parties to the foreclosure action.

Appellants timely filed a Rule 59(e), SCRCP, motion. Following a hearing, the master granted in part Appellants' motion to amend the order to state that Heatley, McCann, Monk, and Bessent own undivided interests in the Ship's Store and Fuel Docks as tenants in common. Appellants timely appealed.

**Standard of Review**

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543, 677 S.E.2d 574, 578 (2009) (quoting *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991)). "The interpretation of a statute is a question of law." *Vista Del Mar Condo. Ass'n v. Vista Del Mar Condos., LLC*, 441 S.C. 223, 235, 892 S.E.2d 532, 539 (Ct. App. 2023) (quoting *DomainsNewMedia.com, LLC v. Hilton Head Island-Bluffton Chamber of Com.*, 423 S.C. 295, 300, 814 S.E.2d 513, 516 (2018)).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Id.* (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). When a "statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581. "Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and each given effect, if it can be done by any reasonable construction." *Vista Del Mar Condo. Ass'n*, 441 S.C. at 235, 892 S.E.2d at 539 (quoting *Hinton v. S.C. Dep't. of Prob., Parole & Pardon Servs.*, 357 S.C. 327, 333, 592 S.E.2d 335, 339 (Ct. App. 2004)).

**Analysis**

**I. Vested Interests in Common Elements of the Regime**

Appellants argue the master misconstrued sections 27-31-60 and 27-31-70 in finding the 2007 Amended Master Deed was void, asserting § 27-31-60 provides the procedure for amending a master deed to remove or add common elements. Appellants propose the common meaning of "acquiescence" should apply because the General Assembly did not define the term and South Carolina courts have not addressed its definition. They further contend the evidence shows Respondents acquiesced to the 2007 Amended Master Deed and its changes to the 2006 Master Deed. We disagree.

The South Carolina Horizontal Property Act governs horizontal property regimes. *See* §§ 27-31-10 to 440. Section 27-31-40 of the South Carolina Code provides that once property is submitted to a horizontal property regime, individual "apartments" may be owned, conveyed, and encumbered independently of others, subject to the same general principles of law governing real property.

> "Apartment" means a part of the property intended for any type of independent use (whether it be for residential, recreational, storage, or business) including one or more rooms or enclosed spaces located on one or more floors (or parts thereof) in a building or if not in a building in a separately delineated place whether open or enclosed and whether for the storage of an automobile, moorage of a boat, or other lawful use, and with a direct exit to a public street or highway, or to a common area leading to such street or highway;

§ 27-31-20.

Section 27-31-60 further describes the property rights of owners in a horizontal property regime:

> (a) An apartment owner shall have the exclusive ownership of his apartment and shall have a common right to a share, with the other co-owners, in the common elements of the property, equivalent to the percentage

representing the value of the individual apartment, with relation to the value of the whole property. . . .

The percentage shall be expressed at the time the horizontal property regime is constituted, shall have a permanent character, and shall not be altered without the acquiescence of the co-owners representing all the apartments of the property.

. . . .

(b) The owner of any apartment embraced in the master deed and building plan shall have the right to require specific performance of any proposed common elements for recreational purposes set out in the master deed which are included in the next stage of the development that applies to recreational facilities in the event the additional stages of erection do not develop.

"The common elements, both general and limited, shall remain undivided and shall not be the object of an action for partition or division of the co-ownership. Any covenant to the contrary shall be void." § 27-31-70. "Each co-owner may use the elements held in common in accordance with the purpose for which they are intended, without hindering or encroaching upon the lawful rights of the other co-owners." § 27-31-80. "[O]nce common elements are set aside and vested in the co-owners, such co-owners may not be unilaterally deprived of their interests in the common elements by the actions of the developer." *Vista Del Mar Condo. Ass'n*, 441 S.C. at 237, 892 S.E.2d at 540 (quoting *Reyhani v. Stone Creek Cove Condo. II Horizontal Prop. Regime*, 329 S.C. 206, 211, 494 S.E.2d 465, 468 (Ct. App. 1997)).

Generally, the unit owners in a horizontal property regime hold the common elements as tenants in common. Usually when parties share in the co-ownership of property, they have a right to request partition of the property. The unit owners in a horizontal property regime, however, do not have a right to partition the common elements. Section 27-31-70 of the Act provides, "The common elements, both general and limited, shall remain undivided and shall not be the

object of an action for partition or division of the co-ownership. Any covenant to the contrary shall be void." Thus, the unit owners cannot partition their interest in common elements from other apartment owners, nor can they divide their ownership interest in the common elements from their ownership interest in their units.

*Id*. at 236-37, 892 S.E.2d at 539-40.

This court recently addressed unit owners' rights in the common elements of a horizontal property regime in *Vista Del Mar Condominium Ass'n*, 441 S.C. at 230, 832 S.E.2d at 536. There, the developer filed a master deed creating a regime to be developed in multiple phases. *Id.* at 230-31, 533 S.E.2d at 536. A transition period began upon the filing of the master deed, during which the developer was authorized to expand or contract the regime and act on the association's behalf. *Id.* After the developer removed certain unimproved property previously designated as a regime common area, certain unit owners and their owners' association sued, challenging the removal of the transferred property from the regime. *Id.* at 232, 892 S.E.2d at 537. The circuit court granted the developer summary judgment, finding "the Developer had the authority to remove the Property from the Regime pursuant to the Master Deed and the Act did not prohibit the removal. " *Id.* The unit owners appealed, arguing, inter alia, that the circuit court erred in allowing the Developer to remove the property in contravention of § 27-31-70. *Id.* at 235, 892 S.E.2d at 539. This court held:

> Considering the Act as a whole, we hold Section 27-31-70's prohibition of partition or division of common elements concerns the unit owners' rights in the common elements and does not prohibit a developer from removing non-recreational common elements from a regime *unless those common elements have vested in the unit owners pursuant to the terms of the master deed*. Therefore, we look to the terms of the Master Deed to discern whether Developer's removal of the Property from the Regime was valid.

*Id.* at 238, 892 S.E.2d at 540 (emphasis added). The *Vista Del Mar* master deed allowed the developer to expand or contract the regime during the transition period; to subdivide certain portions of the common area from the project; "to remove the subdivided portion with an amendment" of the master deed; and

designated the developer as "acting on behalf of itself and as attorney-in-fact for all unit owners." *Id.* Because the master deed allowed the developer to unilaterally remove the unimproved non-recreational property from the regime, this court upheld the grant of summary judgment to the developer. *Id.*

By contrast, the unit owner Respondents in this case already had a vested interest in the Ship's Store and Fuel Docks as common elements of the regime. Under the language of the 2006 Master Deed, each unit owner held an undivided ownership interest in the common elements *upon the acquisition of their individual unit.* *See Vested*, Black's Law Dictionary (11th ed. 2019) (defining "vested" as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute"). Because each unit owner had a vested property interest in the Ship's Store and the Fuel Docks as common elements, the Declarant was prohibited from making unilateral changes that would deprive Respondents of this property. *See, e.g.*, *Vista Del Mar*, 441 S.C. at 237, 892 S.E.2d at 539-40 ("[O]nce common elements are set aside and vested in the co-owners, such co-owners may not be unilaterally deprived of their interests in the common elements by the actions of the developer." (quoting *Reyhani*, 329 S.C. at 211, 494 S.E.2d at 468)).

The 2006 Master Deed allowed the Declarant to unilaterally amend the master deed during the period in which it could appoint the directors of the Council. But the very same section forbids "any such amendment" if it adversely affects the title "to any Unit" unless the unit owner consented in writing:

> For so long as the Declarant has the right to appoint and remove directors of the Council of Co-Owners as provided in this Master Deed, the Declarant may unilaterally amend this Declaration for any purpose . . . . However, any such amendment shall not adversely affect the title to any Unit unless the Owner shall consent in writing.

Appellants properly admit there is no evidence that the individual unit owners signed anything approving the changes to the 2006 Master Deed. And, we note that even if the 2006 Master Deed allowed for a unilateral change in the common elements, such would be void under § 27-31-70 as contrary to the principle that "common elements, both general and limited, shall remain undivided and shall not be the object of an action for partition or division of the co-ownership." *See* § 27-31-70; *Vista Del Mar Condo. Ass'n*, 441 S.C. at 238, 892 S.E.2d at 540 (holding §

27-31-70 "does not prohibit a developer from removing non-recreational common elements from a regime unless those common elements have vested in the unit owners pursuant to the terms of the master deed.")

Section 27-31-60 does not support a contrary result. By its own language, section 27-31-60(a) provides that "[t]he percentage [of ownership of the common elements] shall be expressed at the time the horizontal property regime is constituted, shall have a permanent character, and shall not be altered without the acquiescence of the co-owners representing all the apartments of the property." More significantly, the issue here is not one of percentage ownership interests. Rather, the issue here is that the unit owners were wholly divested of their vested ownership interests in the marina common elements in contravention of the 2006 Master Deed and § 27-31-70. Section 27-31-60 governs a unit owner's relative proportional ownership of common elements; it does not serve to allow unit owners to silently "acquiesce" to the unilateral divestment of that interest.

Even if we could accept Appellants' argument that § 27-31-60 allows unit owners to acquiesce to an amendment fully divesting them of vested common area ownership rights, we see no evidence of acquiescence in this record. Appellants argue the master "should have found that the actions of the Council of Co-owners show clear acquiescence [to] these Units being changed from Common Elements to individual Units over the course of dealing from 2007 to the filing of this action. For ten (10) years no one at the Association thought otherwise." It is Appellants' position that Respondents acquiesced to the change in ownership because they did not object to the changes after the 2006 Master Deed was purportedly amended or when the mortgagee foreclosed. But, as noted above, the common area usage problems related to the Ship's Store and Fuel Dock began only after Farmer took possession of the units in 2016 and began to block the property owners' access.

## II. Judicial Estoppel

Appellants further argue the master erred in finding Respondents' claims are not barred by the application of judicial estoppel due to inconsistent positions taken in this case and in the prior foreclosure action. In Appellants' view, Respondents should be estopped from pursuing claims over their interests in the common elements because the Council appeared in the foreclosure action and did not attempt to object to the sale of the Ship's Store or Fuel Docks. We disagree.

"Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously

asserted in the same or [a] related proceeding." *Cothran v. Brown*, 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004). "The purpose of the doctrine is to ensure the integrity of the judicial process, not to protect the parties from allegedly dishonest conduct by their adversary." *Id.*

> For the doctrine of judicial estoppel to apply, the following elements must be satisfied: (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.

*Auto-Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 598, 748 S.E.2d 781, 788 (2013). "The doctrine of judicial estoppel is an equitable concept and should be applied sparingly, with clear regard for the facts of the particular case." *Cothran*, 357 S.C. at 216, 592 S.E.2d at 632.

We agree with the master that the elements of judicial estoppel have not been met here. First, the individual Respondents did not appear in the foreclosure case and—even if the Council's appearance in the foreclosure action could satisfy this single element—there is no evidence of any intentional effort by Respondents to mislead the court. Both sides zealously and appropriately argued their cases before both the master and this court. The purpose of judicial estoppel "is to ensure the integrity of the judicial process." *Id.* at 215, 592 S.E.2d at 631. Here, the record provides no suggestion that such integrity has been compromised by these parties seeking to enforce their vested property interests.

**Conclusion**

For these reasons, the master's order is

**AFFIRMED.**[6]

---

[6] As our findings here are dispositive, we decline to address Respondents' additional sustaining grounds. *See Futch v. McAllister Towing of Georgetown,*

**WILLIAMS, C.J. and TURNER, J., concur.**

---

*Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when a prior issue was dispositive).