2364

HERITAGE FEDERAL SAVINGS AND LOAN ASSOCIATION (Now Resolution Trust Corporation), Plaintiff v. EAGLE LAKE AND GOLF CONDOMINIUMS, a South Carolina Limited Partnership, Allen W. May, Peggy W. May and Kevin Campbell, Trustee for Coker Builders, Inc., and Eagle Lake and Golf Condominiums Homeowners Association, Inc., Defendants, of whom Kevin Campbell, Trustee for Coker Builders, Inc., is the Respondent, and Eagle Lake and Golf Condominiums Homeowners Association, Inc., is the Appellant.

(458 S.E. (2d) 561)

Court of Appeals

---

*James B. van Osdell* and *Cynthia Graham Howe*, both of *van Osdell, Lester, Howe & Rice*, Myrtle Beach, *for appellant.*

*Dalton B. Floyd, Jr.*, of *The Floyd Law Firm*, Surfside Beach, *for respondent.*

Heard Jan. 10, 1995.

Decided June 19, 1995.

CURETON, Judge:

This is an action to foreclose a purchase money mortgage and enforce a mechanics' lien on property now composing the Eagle Lake and Golf Horizontal Property Regime. Eagle Lake and Golf Condominiums Homeowner Association, Inc. (Association) appeals the master's order of foreclosure and sale. We affirm in part, reverse in part and remand.

This case represents the latest round of litigation over the development and sale of the condominium project. In *Resolution Trust Corp. v. Eagle Lake and Golf Condominiums*, 310 S.C. 437, 427 S.E. (2d) 646 (1993), our Supreme Court affirmed the grant of summary judgment to Coker Builders on its counterclaim against Heritage Federal, also the holder of a mortgage on the property. The Supreme Court held Heritage Federal's, now Resolution Trust Corporation's, mortgage was void. The procedural background of this case is set out in the Supreme Court's opinion and will not be repeated here.

In the case before us, Coker Builders, now in Chapter 7 bankruptcy, proceeded in foreclosure against both the limited partnership and the Homeowners Association and various third-party defendants. The Homeowners Association is the only party that has appealed. Kevin Campbell, as Trustee for Coker Builders, has been substituted as the real party in interest.

The master held: (1) Coker was entitled to foreclose upon its mortgage and had waived any deficiency judgment; (2) a building designated the "clubhouse" located on the regime property was an "out-parcel" rather than a common element; (3) even if the clubhouse is a common element, the Association has by waiver, estoppel, and laches, lost the right to adminis-

ter the clubhouse as regime property; and (4) Eagle Lake, as developer, amended the master deed to permit expansion of the regime. The master further found Coker held a second lien on the property by virtue of a 1988 mechanics' lien, and that the mechanics' lien also covered the clubhouse and the right to develop additional phases. The master ordered a foreclosure sale of the property.

The issues on appeal are: (1) whether the Master Deed and its subsequent amendments allow for additional apartments to be built in the condominium; (2) whether the clubhouse is part of the common elements of the regime and therefore may not be foreclosed upon; and (3) whether the Association by waiver and estoppel has lost all rights to the clubhouse.

## I. *Scope of Review*

The parties disagree on our scope of review. This case began as an equitable mortgage foreclose action. It is beyond question, however, that the disposition of this case depends largely on the interpretation of the master deed and allied documents. The interpretation of a deed is an equitable matter. *Wayburn v. Smith*, 263 S.C. 518, 211 S.E. (2d) 560 (1975), citing *Hann v. Carolina Cas. Ins. Co.*, 252 S.C. 518, 167 S.E. (2d) 420 (1969); *Wolf v. Hayes*, 161 S.C. 293, 159 S.E. 620 (1931). In any event, because the predominate issues involved in this appeal are equitable, we review the evidence to determine the facts in accordance with our view of the preponderance of the evidence. *Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 425 S.E. (2d) 764 (Ct. App. 1993).

## II. *Amendment of the Master Deed*

The Association first argues the master erred in holding the master deed had been property amended to allow the development of additional phases in the condominium. We agree.

Horizontal property regimes are governed by the South Carolina Horizontal Property Act, S.C. Code Ann. § 27-31-10 through 300 (1991 & Supp. 1993). The Act requires the developer of the regime to record a master deed which expresses a comprehensive list of particulars. *See Harrington v. Blackston*, Op. No. 2337,— S.C. —, — S.E. (2d) — (S.C. Ct. App. filed June 2, 1995) (Davis Adv. Sh. No. 13 at

61). The Eagle Lake condominium project began with the renovation of a twenty-apartment building with the developer envisioning several additional phases so as to culminate in a 272-unit condominium complex. This building was designated as Building H on plans attached to the master deed.

The shortcomings of the master deed are at the core of much of the litigation that has plagued this project from early on. The master deed filed in January 1985 was deficient in many respects, including a failure to comply with the statutory requirements as to a phased development.[1] The developer sought to amend the master deed on two occasions. The first time occurred in December 1986 when the developer filed an amendment purporting to add to the regime an additional building designated as Building A and containing 36 units. Only the developer signed this amendment. A second attempt occurred in September 1987 when the developer and several apartment owners filed documents[2] purporting to provide for the expansion of the regime by the addition of "later constructed buildings and amenities." The documents also sought to ratify the addition of Building A to the regime. According to the Association, only 26 of the 56 unit owners signed these documents.

Section XXIX of the matter deed allows for amendment of the master deed in two ways. First, "until all apartment units are sold, [developer] reserves the right to make changes in the master deed, upon advice of counsel, and as may be required by law, or [to] correct any typographical error. . . ." The master deed also provides for amendment by affirmative vote of all apartment owners in the condominium.

The Association argues the wording above quoted permits correction of typographical errors only and that the deficiencies involved here cannot be characterized as mere typographical errors. Thus, it argues the amendment

---

[1] While the Association notes the master deed and first amendment do not comply with certain provisions of S.C. Code Ann. § 27-31-100 and do not provide for phasing even as to the 36 units in Phase II, the Association does not contend those units are not legally a part of the regime. We therefore make no ruling whether the deficiencies in the original master deed and amendments affect the validity of the regime as relates to the 56 units already constructed. That issue was not appealed and is not before us.

[2] Each of the unit owners signed separate documents.

filed in September 1987 was ineffective because it required the unanimous consent of all unit owners. We disagree and hold the developer had authority to amend the master deed without the consent of all of the apartment owners. Words used in a statute should be given their plain and ordinary meaning. *First Baptist Church v. City of Mauldin,* 308 S.C. 226, 417 S.E. (2d) 592 (1992). S.C. Code Ann. § 27-31-100(f) permits a developer to reserve certain rights provided he states those rights with specificity in the master deed. Here, the master deed permits changes "on advice of counsel" and "as may be required by law." Inferentially, the provision is designed to permit changes to the master deed necessary to carry out the intentions of the developer in establishing the regime and to ensure the recorded documents comply with the requirements of the Horizontal Property Act. *See.* Rohan & Reskin, *Condominium Law and Practice* § 7.02[2](m) (1992).[3] Moreover, Section XXIX provides consistent with the Act, that such changes may not prejudice the right of a unit owner by increasing his "share of the common expenses nor increase the purchase price of the Apartment unit." The present apartment owners purchased their units expecting a condominium complex of up to 272 units, not the present 56 units. They are not prejudiced by the developer's actions in fulfilling that expectation. Finally, as we interpret the conjunction "or" in this provision, the "or" separates the broader authority to amend as required by law from the authority to amend to correct typographical errors.

The Association also argues that even if the developer had authority to execute an amendment that would permit the building of additional apartments in the condominium, the second amendment documents do not accomplish this because they do not comply with S.C. Code Ann. § 27-31-100(g). It argues the amendment fails to: specify the

---

[3] "A developer will frequently reserve certain rights by express provision in the declaration. These rights typically include: use of, and access to, the common elements for purposes of constructing and selling units; annexation of additional property into or other modification of the condominium regime; amending the declaration and other condominium documents to correct errors or to comply with secondary mortgage market requirements; and approval/veto rights with respect to any amendment to the condominium documents proposed by the condominium association."

maximum number of units in each phase; specify the dates the developer would elect to proceed with each stage; provide a general description of the nature and use of any additional common elements to be added to the regime; and provide a chart with the percentage ownership interest of each unit owner in the common elements at each stage of development. Of course, Coker makes several strained arguments in support of its contention the second amendment complies with § 27-31-100(g).[4] Construing the amendment against its drafter, the developer, as we are required to do, we agree with the Association that the master deed and its amendments do not comply with the requirements of the Acts to effectuate phasing of the condominium. Having so concluded, we are quick to note that because Coker prayed for and the master's order provides for the conveyance of all of the rights of the developer to the purchaser at the foreclosure sale,[5] a purchaser at public sale would nevertheless appear to have the right to amend the master deed to provide for building additional apartments in the condominium. We specifically do not rule on this issue because it is not presented to us.

### III. *Ownership of the Clubhouse*

The Association argues the clubhouse is a common element and may not be sold as separate property of the mortgagor in foreclosure. To resolve this dispute, we must decide what property was submitted to the regime.

The clubhouse appeared in the legal description of the lands submitted to the regime in the master deed. Common elements are defined in Section III of the master deed entitled *Dwellings And Common Elements* and Section XXXV enti-

---

[4] There is simply no merit to Coker's position that the condominium consisted of only one phase of 272 apartments. That being the case, the recorded documents clearly do not comply with §§ 27-31-100 and 27-31-110.

[5] The description of the property foreclosed, which is attached to Coker's counterclaim and the master's order, states the property to be sold at the foreclosure sale shall include:

all of original Declarants [sic] reserved easements, rights and/or powers in the master deed, including but not limited to rights to appoint directors to the Homeowner's Association, reserved easements and rights to construct additional dwellings units up to 216 additional dwelling units upon the common elements and add such units to the Eagle Lake and Golf Horizontal Property Regime until the year 1997.

tled *Definitions*. Section XXXV, consistent with the Horizontal Property Act, defines a dwelling as being synonymous with the term apartment. It also defines "common elements" as including "the elements described in the Horizontal Property Act and the master deed." Section III defines common elements to "comprise all of the real property, improvements and facilities of the condominium other than the dwellings. . . ." Section 27-31-20 of the Act defines common elements to include the land on which the apartments stand, foundations, main walls, roofs, basements, yards, gardens, lobbies, halls, walkways, premises for the lodging of janitors or persons in charge of the premises, compartments for the installation of central services etc., and "all other elements of the property rationally of common use or necessary to its existence, upkeep, and safety."

Clearly, the Matter deed's description of the real property submitted to the regime includes the entire 6.9 acres and any improvements thereon. While one plat attached to the master deed geographically depicts certain areas contiguous to the 20 units as common elements and does not show the clubhouse, another plat that is referred to in the legal description in the master deed does show the clubhouse as an improvement. Moreover, the plat recorded with the first amendment to the master deed shows the clubhouse as an improvement. The first amendment states the developer had amended the master deed to "submit the improvements referred to as Building A and all other improvements as shown on . . ." the last mentioned plat to the regime. We hold that a practical construction of the pertinent provisions of the master deed and its amendments, together with provisions of the Horizontal Property Act, leads to the inevitable conclusion that the clubhouse was an improvement on the 6.9-acre tract at the time it was submitted to the regime and also at the time of the first amendment.[6] Thus, the clubhouse is a common element and may not be sold in foreclosure.

---

[6] Ironically, Coker's president, James Ham, testified Coker conceded the swimming pool and tennis courts were common elements. Mr. Ham further stated Coker had no greater rights in the clubhouse than it has in the pool and tennis courts.

## IV. *Waiver and Estoppel*

The master also found that even if the clubhouse is a common element, the Association has by estoppel or waiver lost its rights to it. Specifically, he found that the use of the clubhouse building as lodging for maintenance personnel, rental office and other uses constitutes both waiver and estoppel.

The developer acknowledged it represented to the homeowners prior to their purchase of apartments in the condominium that the clubhouse was a common element to be enjoyed by all unit owners. The advertisements for the sale of the condominium units show the clubhouse as a common element and state the clubhouse maintenance costs were included in the monthly homeowners assessments. The developer testified he intended for the clubhouse to be a common element. After Coker began foreclosure proceedings and obtained possession of the clubhouse, it converted the building into rental apartments. The homeowners then confronted Coker and a lawsuit ensued.

The essential elements of estoppel as related to the party to be estopped are: (1) conduct that amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that facts are otherwise than and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge actual or constructive, of the real facts. The elements of estoppel as relates to the party claiming estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts; (2) reliance upon the misleading conduct of the party estopped; and (3) prejudicial change in position. *Southern Dev. Land and Golf Co., Ltd. v. South Carolina Pub. Serv. Auth.*, 311 S.C. 29, 426 S.E. (2d) 748 (1993).

Estoppel cannot exist if the knowledge of both parties is equal and nothing is done by one to mislead the other. *Helsel v. City of North Myrtle Beach*, 307 S.C. 24, 413 S.E. (2d) 821 (1992). There is no evidence the Association acted in any way that would amount to a false representation or concealment of a material fact or that it acted in a way to convey an impression that it considered the clubhouse as

anything but a common element.[7] In fact, it appears the developer may have misrepresented the facts relative to his intended use of the clubhouse and those representations were relied upon by the homeowners. Accordingly, the doctrine of estoppel should not be applied against the Association.

Furthermore, there is no evidence the Association waived its right to claim the clubhouse as a common element. Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all material facts upon which those rights depended. *Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 307 S.C. 339, 415 S.E. (2d) 384 (1992). Waiver is an intentional relinquishment of a known right and the party claiming waiver has the burden of establishing it. *Frady v. Smith*, 247 S.C. 353, 147 S.E. (2d) (1966). We, therefore, reverse the master's holding that the clubhouse is not a common element.

### Conclusion

Accordingly, we affirm the master's conclusion the reservation of rights in the master deed authorizes the developer to amend the master deed to provide for the phasing of the condominium. We reverse the master's holding that the second amendment to the master deed in fact provides for phasing of the condominium. We also reverse the master's ruling that the clubhouse is not a common element.

The order of the master is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

HOWELL, C.J., and CONNOR, J., concur.

---

[7] There was testimony the developer promised the homeowners on "numerous occasions" that he was going to "fix up" the building as a clubhouse when he got the money.