# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Vista Del Mar Condominium Association; Dennis M. Merritt, Trustee of the Dennis M. Merritt Living Trust; John J. Hawkins; and Eleanor N. Hawkins, Plaintiffs,

v.

Vista Del Mar Condominiums, LLC; Atlantic Development Company, LLC; Atlantic Coast Funding, LLC; John Doe, a nominal Defendant representing all persons or entities unknown who may claim an interest in the property that is the subject of this action, Defendants,

And

Atlantic Development Company, LLC and Atlantic Coast Funding, LLC, Third-Party Plaintiffs,

v.

Barbara P. Swartz; Nancy S. Case; Winston Salem Daly Development, LLC; Charles F. Webber; Mark L. Skowron, as Trustee of Mark L. Skowron Revocable Trust dated April 24, 2002 and Gail L. Skowron, as Trustee of the Gail L. Skowron Revocable Trust dated 04/24/2002; Norman W. Taylor, Trustee of the Norman W. Taylor Revocable Living Trust dated April 28, 2008; Tim Mitchell Development, LLC; Eric R. Sklut and Lori Levine Sklut; Fred C. Warehime and Patricia F. Warehime; James W. Blackburn, III and Peggy S. Blackburn; Barbara I. Bowser; KHDH, LLC; Beth G. Bauknight; Roderick D. Sanders (or his successor), as Trustee of the Amended and Restated Revocable Declaration of Trust of Anne Mallard Sanders u/a/d January 16, 2015; GGK Properties, LLC; Leon Levine and Sandra Levine; Joseph Moglia and Amy H. Moglia; Angela M. Mason, as Trustee of the Angela Mason

Revocable Trust dated June 9, 2003 and amended and restated May 27, 2007; Dexter R. Barbee, Sr.; Daniel M. Talbert, Sr.; Craig W. Lawton; David N. Dalton; Janet W. Weed, Trustee of the Janet W. Weed Revocable Trust under Trust Instrument dated April 17, 2013; Robert H. Messier, Jr. and Janice H. Messier; Jeffrey Schneider, Trustee for the Jeffrey Schneider Revocable Trust dated August 1, 2017; Phillip Kleinman and Charisse D. Kleinman; Stephen Gatto and Camille Gatto; Lutz Real Estate, LP; Astorg Imports, Inc.; ABLP Properties, LLC; Sutton Children, LLC; Daniel C. Schuster and Mardell J. Schuster; Roy C. Putrino and Eileen M. Putrino; Spencer Squier and Sherri Squier; VDM 1004, LLC; Roger B. Matherly and Bonnie V. Matherly; ITAC 203 LLC; Rebecca R. Shroff and Kersi S. Shroff; Sandra P. Levine and Lori Ann Sklut, Co-Trustees of the Irrevocable Trust F/B/O Amy Beth Levine dated September 18, 1986; David E. Lukowski; Richard B. Kline and Leslie Kline; James P. Aplington and Carol D. Aplington; Michael L. Van Glish and Judith K. Van Glish; Anna A. Olsen; Anne Marie Murray; William J. Pridemore and Irina V. Pridemore; William B. Davidson and Julia Davidson; Bruce Alexander Henderson and Valerie Sokolov; Mark W. Lee; Sue David Kline; Thomas McKiernan and Anne McKiernan; Philip H. Strobl and Amy Mott Strobl; James M. Faircloth and Sylvia Faircloth; Cheryl Jackson and Phillip H. Jackson; Weldon Riggs and Tiffany Riggs; Janet P. Merritt, Trustee of the Janet P. Merritt Living Trust U/A dated March 24, 2000; Melia Mooney Pavoris; William L. Mansfield and Patricia S. Mansfield; Stuart W. Gibbs and Helen R. Gibbs; Michael R. Blackburn and Pamela M. Blackburn; Jeffrey G. Edwards and Teresa T. Edwards; Michael J. Wilk, Third-Party Defendants,

Of which Vista Del Mar Condominium Association; Dennis M. Merritt, Trustee of the Dennis M. Merritt Living Trust; John J. Hawkins; Eleanor N. Hawkins, Barbara P. Swartz; Nancy S. Case; Winston Salem Daly Development, LLC; Charles F. Webber; Mark L.

Skowron, as Trustee of Mark L. Skowron Revocable Trust dated April 24, 2002 and Gail L. Skowron, as Trustee of the Gail L. Skowron Revocable Trust dated 04/24/2002; Norman W. Taylor, Trustee of the Norman W. Taylor Revocable Living Trust dated April 28, 2008; Tim Mitchell Development, LLC; Eric R. Sklut and Lori Levine Sklut; Fred C. Warehime and Patricia F. Warehime; James W. Blackburn, III and Peggy S. Blackburn; Barbara I. Bowser; KHDH, LLC; Beth G. Bauknight; Roderick D. Sanders (or his successor), as Trustee of the Amended and Restated Revocable Declaration of Trust of Anne Mallard Sanders u/a/d January 16, 2015; GGK Properties, LLC; Leon Levine and Sandra Levine; Joseph Moglia and Amy H. Moglia; Angela M. Mason, as Trustee of the Angela Mason Revocable Trust dated June 9, 2003 and amended and restated May 27, 2007; Dexter R. Barbee, Sr.; Daniel M. Talbert, Sr.; Craig W. Lawton; David N. Dalton; Janet W. Weed, Trustee of the Janet W. Weed Revocable Trust under Trust Instrument dated April 17, 2013; Robert H. Messier, Jr. and Janice H. Messier; Jeffrey Schneider, Trustee for the Jeffrey Schneider Revocable Trust dated August 1, 2017; Phillip Kleinman and Charisse D. Kleinman; Stephen Gatto and Camille Gatto; Lutz Real Estate, LP; Astorg Imports, Inc.; ABLP Properties, LLC; Sutton Children, LLC; Daniel C. Schuster and Mardell J. Schuster; Roy C. Putrino and Eileen M. Putrino; Spencer Squier and Sherri Squier; VDM 1004, LLC; Roger B. Matherly and Bonnie V. Matherly; ITAC 203 LLC; Rebecca R. Shroff and Kersi S. Shroff; Sandra P. Levine and Lori Ann Sklut, Co-Trustees of the Irrevocable Trust F/B/O Amy Beth Levine dated September 18, 1986; David E. Lukowski; Richard B. Kline and Leslie Kline; James P. Aplington and Carol D. Aplington; Michael L. Van Glish and Judith K. Van Glish; Anna A. Olsen; Anne Marie Murray; William J. Pridemore and Irina V. Pridemore; William B. Davidson and Julia Davidson; Bruce Alexander Henderson and Valerie Sokolov; Mark W. Lee; Sue David Kline; Thomas McKiernan and Anne McKiernan; Philip H. Strobl and Amy Mott Strobl;

James M. Faircloth and Sylvia Faircloth; Cheryl Jackson and Phillip H. Jackson; Weldon Riggs and Tiffany Riggs; Janet P. Merritt, Trustee of the Janet P. Merritt Living Trust U/A dated March 24, 2000; Melia Mooney Pavoris; William L. Mansfield and Patricia S. Mansfield; Stuart W. Gibbs and Helen R. Gibbs; Michael R. Blackburn and Pamela M. Blackburn; Jeffrey G. Edwards and Teresa T. Edwards; Michael J. Wilk, are the Appellants,

And

Of Which Vista Del Mar Condominiums, LLC, Atlantic Development Company, LLC, Atlantic Coast Funding, LLC and John Doe, a nominal Defendant representing all persons or entities unknown who may claim an interest in the property that is the subject of this action are the Respondents.

Appellate Case No. 2020-000528

———————

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court Judge

———————

Opinion No. 6016
Heard June 15, 2023 – Filed August 16, 2023

———————

**AFFIRMED**

———————

Kenneth Ray Moss and Paul J. Ekster, both of Wright, Worley, Pope, Ekster & Moss, PLLC, of North Myrtle Beach; and Robert E. Lee, of Robert E. Lee, LLC, all for Appellants.

Demetri K. Koutrakos and Harry Alwyn Dixon, both of Callison Tighe & Robinson, LLC, of Columbia, for

Respondents Atlantic Development Company, LLC; Atlantic Coast Funding, LLC; and John Doe.

James Christopher Clark, of McAngus Goudelock & Courie, LLC, of Myrtle Beach, for Respondent Vista Del Mar Condominiums, LLC.

---

**VERDIN, J.:** Vista Del Mar Condominium Association (the Association) and the individual unit owners (Unit Owners) of the Vista Del Mar Horizontal Property Regime (the Regime) (collectively, Appellants) appeal the circuit court's order granting summary judgment to Atlantic Development Company and Atlantic Coast Funding, LLC (collectively, Respondents), quieting title in favor of Respondents to a 2.58-acre tract (the Property), which had been a part of the Regime, and declaring Respondents had a valid easement (Access Easement) that ran with the title to the Property. On appeal, Appellants argue the circuit court erred in upholding the removal of the Property from the Regime because (1) the removal of the Property, which was a common area, was a violation of the Horizontal Property Act[1] (the Act); and (2) the developer, Vista Del Mar, LLC (Developer), no longer had authority to take any action concerning the Regime at the time of the removal. In addition, Appellants argue Developer did not have authority to grant an express easement over Regime property that benefitted the Property. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On December 4, 2003, Developer filed the Master Deed creating the Regime, which consisted of 5.853 acres. The Master Deed provided Phase I of the Regime was composed of Building Number 1, which contained twenty-five units. With the filing of the Master Deed, a transition period began (the Transition Period), during which Developer had authority to expand or contract the Regime and act on behalf of the Association. The Master Deed specified that Developer was entitled to expand the Regime in five additional phases to a total of 250 units. It also authorized Developer to "subdivide portions of the [c]ommon [a]rea from the [Regime] which are unimproved with structures[] and to remove the subdivided portion" through the use of an amendment of the Master Deed, with Developer acting on behalf of itself and as attorney-in-fact for all unit owners.

---

[1] S.C. Code Ann. §§ 27-31-10 to -430 (2007 & Supp. 2022).

Developer submitted an additional five acres to the Regime with the First Amendment to the Master Deed filed June 27, 2006. The First Amendment also described Building 2, which consisted of forty-one units. Developer subsequently removed the Property, which was comprised of portions of the original acreage and the five acres added in the First Amendment to the Master Deed, by filing the Corrected Fourth Amendment to the Master Deed on April 6, 2009. The Corrected Fourth Amendment to the Master Deed referenced a plat that described the Property and showed the Access Easement.

On December 19, 2013, Developer sold the Property to GDMB Ocean, LLC (GDMB Ocean) and assigned the developer rights to GDMB Operations, LLC (GDMB Operations). On November 7, 2014, GDMB Operations filed an amendment to the Master Deed surrendering its Class B Membership, which it contended triggered the three-month phase to end the Transition Period. The Association subsequently granted GDMB Ocean an express easement consistent with the Access Easement shown on the plat referenced in the Corrected Fourth Amendment to the Master Deed.

GDMB Ocean sold the Property and an additional 26.53-acre tract to Atlantic Development Company (Atlantic Development) on January 6, 2016. Atlantic Development secured a promissory note from Atlantic Coast Funding for $24,600,000.00 with a mortgage on both tracts.

The Association and three unit owners brought this action seeking a declaration that the removal of the Property from the Regime was not effective and the Property remained a common area of the Association. Respondents filed counterclaims and a third-party complaint against all of the remaining Unit Owners seeking to quiet title and a declaratory judgment that Atlantic Development owned the Property and had rights to the Access Easement. Respondents filed a motion for summary judgment, which the circuit court initially denied. However, on Respondents' motion to alter or amend, the circuit court granted that motion and summary judgment to Respondents. It held Developer had the authority to remove the Property from the Regime pursuant to the Master Deed and the Act did not prohibit the removal. In addition, it found (1) GDMB Operations, acting on behalf of the Association pursuant to its developer rights, had the authority to grant the express Access Easement and (2) Respondents had an implied easement by plat. This appeal followed.

**STANDARD OF REVIEW**

The appellate court reviews the grant of summary judgment by applying the same standard the circuit court applied pursuant to Rule 56(c) of the South Carolina Rules of Civil Procedure. *Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 133-34, 659 S.E.2d 496, 498 (2008). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Stoneledge at Lake Keowee Owners' Ass'n v. Clear View Constr., LLC*, 413 S.C. 615, 620, 776 S.E.2d 426, 429 (Ct. App. 2015) (omission in original) (quoting Rule 56(c), SCRCP). "When the circuit court grants summary judgment on a question of law, we review the ruling de novo." *Id.* Furthermore, "[i]n determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Stoneledge at Lake Keowee Owners' Ass'n*, 413 S.C. at 620, 776 S.E.2d at 429. "Once the moving party carries its initial burden [of demonstrating the absence of a genuine issue of material fact], the opposing party must do more than rest upon the mere allegations or denials of his pleadings, but must, by affidavit or otherwise, set forth specific facts to show that there is a genuine issue for trial." *Lord v. D & J Enters.*, 407 S.C. 544, 553, 757 S.E.2d 695, 699 (2014). "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Stoneledge at Lake Keowee Owners' Ass'n*, 413 S.C. at 620, 776 S.E.2d at 429 (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)).

## LAW/ANALYSIS

### I. Transition Period

Appellants argue the circuit court erred in finding no genuine issue of material fact existed as to whether the Transition Period ended before Developer filed the Corrected Fourth Amendment to the Master Deed, which removed the Property from the Regime. We disagree.

"When a motion for summary judgment involves a question as to the construction of a deed, the [circuit court] must first determine whether the language of the deed is ambiguous." *Edgewater on Broad Creek Owners Ass'n v. Ephesian Ventures, LLC*, 430 S.C. 400, 406, 845 S.E.2d 211, 214 (Ct. App. 2020). "The language in a deed is ambiguous if it is reasonably susceptible to more than one interpretation." *Id.* (quoting *Penza v. Pendleton Station, LLC*, 404 S.C. 198, 204, 743 S.E.2d 850, 853 (Ct. App. 2013)). "It is a question of law for the court whether the language of

a contract is ambiguous." *Harbin v. Williams*, 429 S.C. 1, 8, 837 S.E.2d 491, 495 (Ct. App. 2019) (quoting *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001)). If a court determines the language is ambiguous, the question of the parties' intent becomes a question of fact, and the court may admit evidence to show the intent of the parties. *Id.* "On the other hand, the construction of a clear and unambiguous deed is a question of law for the court." *Id.* (quoting *S.C. Dep't of Nat. Res.*, 345 S.C. at 623, 550 S.E.2d at 303).

"In construing a deed, 'the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy.'" *Windham v. Riddle*, 381 S.C. 192, 201, 672 S.E.2d 578, 582-83 (2009) (quoting *Wayburn v. Smith*, 270 S.C. 38, 41, 239 S.E.2d 890, 892 (1977)). "In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law." *Id.* at 201, 672 S.E.2d at 583 (quoting *Gardner v. Mozingo*, 293 S.C. 23, 25, 358 S.E.2d 390, 391-92 (1987)). "The intention of the grantor must be found within the four corners of the deed." *Id.* (quoting *Gardner*, 293 S.C. at 25, 358 S.E.2d at 392). "Therefore, 'summary judgment is proper and a trial unnecessary whe[n] the intention of the parties as to the legal effect of the [deed] may be gathered from the four corners of the instrument itself.'" *Edgewater on Broad Creek Owners Ass'n*, 430 S.C. at 407, 845 S.E.2d at 214 (quoting *HK New Plan Exch. Prop. Owner I, LLC v. Coker*, 375 S.C. 18, 23, 649 S.E.2d 181, 184 (Ct. App. 2007)).

The Master Deed provided the Transition Period ended on the earlier of option 1: December 31, 2017; option 2: three months after the sale of 99% "of the maximum number of Units to be contained in all phases of the Regime"; or option 3: three months after Developer surrendered its authority as a Class B member of the Association.[2]

Appellants contend that option 2 is ambiguous as to whether the end of the Transition Period was triggered upon the sale of 99% of the Units actually constructed, as they interpret the provision, or upon the sale of the maximum number of Units that *could have been constructed* if all phases had been added to the Regime, as Respondents claim and the circuit court found. Appellants assert that because only the first two phases of the Regime were completed, the

---

[2] The Association's Articles of Incorporation designated Developer as a Class B member, authorizing it to have three votes for every vote held by Type A members, plus one vote, and granting it the right to appoint or remove any member of the Association's Board of Directors.

Transition Period ended around March 31, 2008, which was three months after 99% of the units in the completed buildings were sold; thus, Developer no longer had the authority to remove the Property from the regime on April 6, 2009.

We hold option 2 is not reasonably susceptible to more than one interpretation, and thus, it is not ambiguous.  *See Edgewater on Broad Creek Owners Ass'n*, 430 S.C. at 406, 845 S.E.2d at 214 ("The language in a deed is ambiguous if it is reasonably susceptible to more than one interpretation." (quoting *Penza*, 404 S.C. at 204, 743 S.E.2d at 853)).  This option triggered the end of the Transition Period with the sale of 99% "of the maximum number of Units to be contained in *all phases* of the Regime."  (emphasis added).  The Master Deed clearly contemplated Developer constructing the Regime in phases and allowed it the authority to expand and contract the Regime as it desired.  The Transition Period was to end the earlier of December 31, 2017 (option 1); when Developer completed the entire Regime (option 2); or when Developer chose to end the development by surrendering its authority as a Class B member (option 3).

Furthermore, we hold option 2 was never triggered because Developer never completed all phases of the Regime contemplated in the Master Deed.  Instead, the Transition Period did not end until February 2015, which was three months after GDMB Operations filed an amendment to the Master Deed surrendering its Class B authority.  Accordingly, we hold the circuit court did not err in finding the Transition Period had not ended and Developer still possessed the authority to remove the Property from the Regime on April 6, 2009.

## II.  Removal of a Common Area

Appellants argue the circuit court erred in allowing Respondents to divide the common elements and remove the Property from the Regime because the plain language of section 27-31-70 of the Act explicitly bars such division.  We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."  *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).  "The legislature's intent should be ascertained primarily from the plain language of the statute."  *Hinton v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 357 S.C. 327, 333, 592 S.E.2d 335, 339 (Ct. App. 2004).  "Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and each given effect, if it can be done by any reasonable construction."  *Id.*  "The interpretation of a statute is a question of law."  *DomainsNewMedia.com, LLC v. Hilton Head Island-Bluffton Chamber of Com.*,

423 S.C. 295, 300, 814 S.E.2d 513, 516 (2018) (quoting *Sparks v. Palmetto Hardwood, Inc.*, 406 S.C. 124, 128, 750 S.E.2d 61, 63 (2013)).

"The rights and authority of [a horizontal property r]egime must be gleaned from the . . . Act and from the master deed." *Roundtree Villas Ass'n v. 4701 Kings Corp.*, 282 S.C. 415, 421, 321 S.E.2d 46, 49 (1984). "The Act requires the developer of the regime to record a master deed which expresses a comprehensive list of particulars." *Heritage Fed. Sav. & Loan v. Eagle Lake & Golf Condos.*, 318 S.C. 535, 539, 458 S.E.2d 561, 564 (Ct. App. 1995); *see, e.g.*, § 27-31-100 (setting forth the particulars a master deed must contain). A developer may "reserve certain rights provided he states those rights with specificity in the master deed." *Heritage Fed. Sav. & Loan*, 318 S.C. at 541, 458 S.E.2d at 565. Specifically, a developer may reserve the right to amend the master deed without the consent of all of the unit owners. *Id.* If the developer plans to develop the property in phases, the master deed must contain a general description of the plan of development including (1) the maximum number of units in each future phase; (2) the date the developer will elect whether to proceed with each phase; (3) a general description of any additional common elements; and (4) a chart showing each original unit owners' percentage interest in the common elements if the developer elects to proceed with all stages of development. § 27-31-100(g). In addition, the developer must attach to the master deed a plot plan and building plans showing proposed improvements and common elements. § 27-31-110.

Generally, the unit owners in a horizontal property regime hold the common elements as tenants in common. *See Baker v. Town of Sullivan's Island*, 279 S.C. 581, 584, 310 S.E.2d 433, 435 (Ct. App. 1983) ("[T]he . . . Act provides that the ownership of the land upon which is built a condominium is held as co-tenants by the owners . . . ."); § 27-31-60(a) (stating the unit owners in a horizontal property regime "have a common right to a share, with the other co-owners, in the common elements of the property, equivalent to the percentage representing the value of the individual apartment, with relation to the value of the whole property"); § 27-31-80 ("Each co-owner may use the elements held in common in accordance with the purpose for which they are intended, without hindering or encroaching upon the lawful rights of the other co-owners."). Usually when parties share in the co-ownership of property, they have a right to request partition of the property. *See* S.C. Code Ann. § 15-61-10(A) (Supp. 2022) (allowing "joint tenants and tenants in common" to request partition of . . . lands, tenements and hereditaments"); S.C. Code Ann. § 15-61-50 (2005) (allowing the court of common pleas to order the partition of "real and personal estates held in joint tenancy or in common"). The unit owners in a horizontal property regime,

however, do not have a right to partition the common elements. Section 27-31-70 of the Act provides, "The common elements, both general and limited, shall remain undivided and shall not be the object of an action for partition or division of the co-ownership. Any covenant to the contrary shall be void." *See Baker*, 279 S.C. at 584, 310 S.E.2d at 435 (stating the unit owners' tenants in common ownership of common elements is not subject to partition). Thus, the unit owners cannot partition their interest in common elements from other apartment owners, nor can they divide their ownership interest in the common elements from their ownership interest in their units.

The Act clearly allows for a developer to develop a regime in phases and requires a developer to set forth in the master deed and plot plan the details of proposed buildings and common elements. *See* § 27-31-100(g) (setting forth the particulars the developer must have in the master deed to develop the regime in two or more phases). The Act also contemplates that a developer may choose to forgo completing all phases of the development. Section 27-31-60(b) of the Act grants unit owners "the right to require specific performance of any proposed common elements for recreational purposes set out in the master deed which are included in the next stage of the development that applies to recreational facilities in the event the additional stages of erection do not develop." The Act does not grant unit owners similar rights to demand specific performance of the remaining common elements that are not recreational. However, this court recognized "once common elements are set aside and vested in the co-owners, such co-owners may not be unilaterally deprived of their interests in the common elements by the actions of the developer." *Reyhani v. Stone Creek Cove Condo. II Horizontal Prop. Regime*, 329 S.C. 206, 211, 494 S.E.2d 465, 468 (Ct. App. 1997).

Considering the Act as a whole, we hold Section 27-31-70's prohibition of partition or division of common elements concerns the unit owners' rights in the common elements and does not prohibit a developer from removing non-recreational common elements from a regime unless those common elements have vested in the unit owners pursuant to the terms of the master deed. Therefore, we look to the terms of the Master Deed to discern whether Developer's removal of the Property from the Regime was valid.

The Master Deed authorized Developer to expand or contract the Regime and act on behalf of the Association during the Transition Period. It also allowed Developer to "subdivide portions of the Common Area from the Project which are unimproved with structures and to remove the subdivided portion" with an amendment of the Master Deed, with Developer acting on behalf of itself and as

attorney-in-fact for all unit owners. Because Developer had the right to unilaterally remove common areas unimproved with structures from the Regime, the common areas did not become vested in the Unit Owners until they were improved or the Transition Period ended. *See Vested*, Black's Law Dictionary (11th ed. 2019) (defining "vested" as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute). Appellants have not presented any evidence the Property was improved with structures. *See Lord*, 407 S.C. at 553, 757 S.E.2d at 699 (stating that "once the moving party carries its initial burden [of demonstrating the absence of a genuine issue of material fact], the opposing party must do more than rest upon the mere allegations or denials of his pleadings, but must, by affidavit or otherwise, set forth specific facts to show that there is a genuine issue for trial"). Accordingly, we hold Developer's removal of the Property from the Regime was valid and the circuit court did not err in granting Respondents summary judgment.[3]

### III. Access Easement

As to the circuit court's findings concerning the Access Easement, we affirm pursuant to Rule 220(b), SCACR, and the following authorities: *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 451, 814 S.E.2d 643, 653-54 (Ct. App. 2018) ("Under the two[-]issue rule, whe[n] a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case." (alterations in original) (quoting *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 902 (2010), *abrogated on other grounds by Repko v. County of Georgetown*, 424 S.C. 494, 818 S.E.2d 743 (2018))).

---

[3] We note the circuit court erred in holding the Property was not a statutory common element. Section 27-31-20 of the Act defines "general common elements" in part as "[t]he land whether leased or in fee simple and whether or not submerged on which the apartment or building stands" and "[a]ll other elements of the property . . . rationally of common use or necessary to its existence, upkeep, and safety." The Master Deed defined "common area" as "all of the Regime property after excluding the Units . . . ." The Master Deed's use of the term "common area" was the equivalent of the statutory term "common element"; the Property, which indisputably was a common area of the Regime, was, therefore, a common element.

**CONCLUSION**

Based on the foregoing, the circuit court's order granting summary judgment to Respondents is

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS, J., concur.**